

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

The following constitutes the ruling of the court and has the force and effect therein described.

_____

**Signed August 8, 2019**                                          **United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § § | |
| LUIS ENRIQUE MEJORADO, | § § § | BANKR. CASE NO. 17-34064-BJH (CHAPTER 7) |
| DEBTOR. | § § § | |
| NEXTGEAR CAPITAL INC., | § § | ADV. PROC. NO. 18-03019 |
| PLAINTIFF, v. | § § § § | Related to ECF No. 1 |
| LUIS ENRIQUE MEJORADO, | § § § | |
| DEFENDANT. | § | |

## MEMORANDUM OPINION

NextGear Capital, Inc. ("**NextGear**") sued Luis Mejorado ("**Mejorado**") claiming that his debt to it should be declared nondischargeable pursuant to Bankruptcy Code sections 523(a)(2)(A), (a)(4) and

(a)(6). This memorandum opinion comprises the court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, made applicable in adversary proceedings by Federal Rule of Bankruptcy Procedure 7052. NextGear proved that its $219,987.64 claim against Mejorado should be excepted from discharge under section 523(a)(6).

FACTS

**The Parties' Agreement**

Mejorado was the sole proprietor of Ace Auto Group, a car dealership. NextGear financed Mejorado's inventory purchases, initially allowing him to borrow up to $50,000, as the defendant's demand promissory note in NextGear's favor reflects (the "**Note**").[1] It later increased Mejorado's borrowing limit to $875,000. NextGear took a security interest[2] in its lender-financed inventory and titles to those vehicles as well as a blanket security interest in "other collateral" Mejorado owned as described in the Note.[3] Although Mejorado agreed to pay NextGear the sale proceeds of vehicles it had financed within twenty-four hours after he'd received them, in practice, Mejorado usually sent NextGear its money within seven days.

NextGear's Title Release Program allowed Mejorado some flexibility with inventory it had financed. The program enabled Mejorado to take possession of vehicles subject to NextGear's lien and their certificates of title without simultaneously paying NextGear. If Mejorado did not sell a vehicle within seven days, the program required him to return the certificates of title to NextGear; but he agreed to send NextGear the money within twenty-four hours of any car he did sell during that seven-day period. If Mejorado failed to turn over the proceeds to NextGear timely, their agreement provided that he would immediately owe the lender the balance on the vehicle.

---

[1] Pl. Ex. 2 (Demand Promissory Note and Loan and Security Agreement).
[2] *Id.*
[3] NextGear filed a UCC-1 to perfect its security interest on October 10, 2013.

NextGear's claim rests on the disposition of several vehicles. The first three were financed through NextGear's Title Release Program: (1) 2016 Chevrolet Tahoe (the "**Tahoe**"), (2) 2016 Land Range Rover ("**Range Rover**") and (3) 2015 GMC Sierra ("**Sierra**" and collectively, the "**Title Vehicles**").[4] The trial evidence established that Mejorado sold each of the Title Vehicles, commingled the funds with money in his sole bank account[5] and never remitted the proceeds to NextGear.

NextGear claims that it is still owed $67,470.40 for the Sierra and Tahoe.[6] At trial Mejorado conceded that this amount was accurate. He testified that he never delivered the vehicles or their certificates of title to NextGear or paid it the sale proceeds, instead depositing them in his bank account and using the money for other purposes.

Mejorado also acquired the Range Rover through the Title Release Program for $99,000.[7] The defendant testified that he signed a false buyer's order—a document itemizing the price of each item on the vehicle—reflecting that he owned the Range Rover, which in fact belonged to NextGear. He used the buyer's order to borrow $102,285.93 from American Eagle Credit Union,[8] which secured its loan with a first lien on the car.[9] Mejorado, on behalf of Ace Auto, then sold the Range Rover to himself: he transferred title to his name and deposited the sales proceeds (that is, American Eagle loan proceeds) in his business account. After using it for a few months, Mejorado traded the Range Rover to Gateway Buick GMC. The plaintiff's evidence was less than clear regarding the subsequent transactions associated with

---

[4] NextGear also financed a 2016 Chevrolet Silverado as inventory for Ace but conceded that it repossessed and sold the 2016 Chevrolet Silverado for $25,752. Pl. Ex. 1, p. 6 at ¶ 14 (business records affidavit of Tammy Noe).

[5] April 20, 2019 Hearing Transcript ("**Hr'g. Tr.**"), p. 33, lines 5-16. Mejorado testified that he maintained a single bank account for both business and personal banking.

[6] Pl. Ex. 4.

[7] Hr'g Tr., p. 60, line 25 – p. 61, line 3.

[8] *See* Pl. Ex. 6 (buyer's order). *See also* Hr'g Tr., p. 61, lines 7-15; p. 70, lines 22-25; *and* Pl. Ex. 27, p. 2 (Range Rover Deal Jacket Documentation).

[9] Hr'g. Tr., p. 70, lines 22-25; Pl. Ex. 27, p. 2. Mejorado admitted that he had not told American Eagle that the vehicle was acquired using NextGear floor plan financing.

the Range Rover. Gateway seems to have given Mejorado a trade-in allowance of $80,000 to be credited against the purchase of yet another vehicle—the 2017 GMC Sierra—for $52,489.00. Gateway's sales order for the Sierra reflected the payoff of American Eagle for the loan the Range Rover secured ($97,756.39).[10] Despite the substantial trade-in allowance, the total sales price for the Sierra, together with taxes, fees and other charges, less Mejorado's $3000 cash payment, was $63,021.58. That sum was financed by yet another lender, Allied Financial.[11] Mejorado used the funds acquired through these transactions to repay American Eagle and Gateway Buick GMC but paid NextGear nothing for the Range Rover.[12]

Mejorado never revealed to NextGear that he'd used its property, the Ranger Rover, for personal purposes; that he'd traded the Range Rover for the GMC Sierra; or that he secured financing from American Eagle using inventory he'd acquired with NextGear's money and that remained subject to its security interest. Instead, Mejorado used the proceeds of NextGear's collateral to pay his debts to other lenders, to make payroll for his car dealership and to satisfy other business overhead.[13]

NextGear also financed Mejorado's acquisition of a 2016 Cadillac Escalade ("**Escalade**") for which he never paid. Mejorado sold the Escalade subject to NextGear's lien to a third party for $63,509.27 and used the sale proceeds to pay expenses and debts secured by other vehicles NextGear had not financed.[14] NextGear claims it is owed $57,012.50 for the Escalade.[15]

**Bankruptcy**

---

[10] Pl. Exs. 33, 35.

[11] *Id.* at p. 89, lines 5-11; *see also* Pl. Ex. 35.

[12] Hr'g. Tr., p. 91, lines 19-21.

[13] *Id.* at p. 72, lines 2-8. Mejorado testified that at the time of this transaction, his monthly overhead was about $28,000. He admitted that he did not tell NextGear of the Range Rover sale because he needed the money to run his business.

[14] *Id.* at p. 57, lines 17-20; p. 58, lines 6-8.

[15] Pl. Ex. 4.

Mejorado testified that after the November 2016 elections, Ace Auto Group began to have financial problems. He reacted to a decline in business by reducing the number of employees in December 2016 but finally closed the business in April 2017, after which he surrendered vehicles to NextGear and other floor plan lenders. Mejorado filed chapter 7 on October 31, 2017. Mejorado's scheme left him in debt to NextGear for $219,987.64 as of the petition date, a sum NextGear established at trial. NextGear timely sued for a determination that Mejorado's debt to it was nondischargeable pursuant to Bankruptcy Code sections 523(a)(2)(A), 523(a)(4) and 523(a)(6). NextGear as plaintiff has the burden of proving the debt nondischargeable by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991).

### § 523(a)(2)(A)

NextGear claims that Mejorado's debt to it was one "for money, property, services, or an extension, renewal, or refinancing of credit" that was "obtained by false pretenses, a false representation, or actual fraud." With respect to false representations and false pretenses, a creditor must prove that (1) the debtor made a representation; (2) the debtor knew the representation was false; (3) the debtor made the representation with the intention to deceive the creditor; (4) that the creditor actually and justifiably relied on such representations; and (5) that the creditor sustained losses as a proximate result of its reliance. *In re Acosta*, 406 F.3d at 372; *RecoverEdge, L.P. v. Pentecost*, 44 F.3d 1284, 1293 (5th Cir.1995); *McCoun v. Rea* (*In re Rea*), 245 B.R. 77, 85 (Bankr.N.D.Tex.2000). False representations and false pretenses within the meaning of section 523(a)(2)(A) require a showing of (i) the existence of a knowing and fraudulent falsehood, (ii) describing past or current facts, (iii) that the creditor relied on in deciding to extend credit to the debtor. *RecoverEdge,* 44 F.3d at 1292-93.

NextGear alleges that Mejorado committed fraud by borrowing money from it to buy vehicles he transferred to others or put to his personal use, all without repaying NextGear. It also contends that Mejorado made false representations every time he asked NextGear to extend credit to finance a vehicle

5

purchase. It relies on the Note, in which Mejorado acknowledged that each of his requests for a title release pursuant to the Title Release Program, he was making a separate and continuing representation to NextGear that he would either return the title within seven days or pay NextGear the proceeds of the sale.[16] It argues that for each of the vehicles for which he has not paid, Mejorado misrepresented his intent to pay NextGear, rendering the debts nondischargeable.

Although the evidence established the first and second elements of section 523(a)(2)(A), NextGear did not prove that Mejorado had the requisite intent or that NextGear relied on his representations with respect to the GMC Sierra and Chevrolet Tahoe. The evidence connected with Mejorado's dealings involving the Range Rover supported a finding that Mejorado intended to deceive *American Eagle* by Mejorado not disclosing NextGear's interest in the Range Rover; but no evidence established that Mejorado intended to deceive *NextGear*. Nor did the evidence show that NextGear justifiably relied on Mejorado's representations given the many "red flags" it should have recognized in its dealings with the defendant. Its failure to act on those negates its claim of justifiable reliance on Mejorado's misrepresentations and thus does not satisfy section 523(a)(2)(A).

**A. The GMC Sierra and Chevrolet Tahoe**

NextGear proved that every time Mejorado asked it to release the certificate of title for a vehicle NextGear financed, he represented that within seven days he would either: (1) pay NextGear the proceeds of the sale of the vehicle; or (2) return the vehicle's title to NextGear.[17] Though Mejorado knew of his

---

[16] Pl. Ex. 2, ¶ 4(f) (". . . Borrower hereby represents, warrants, covenants, and agrees: . . . To hold all amounts received from the sale of any Unit of Lender Financed Inventory in the form as received in trust for the sole benefit of and for Lender, and to remit such funds satisfying all amounts due Lender and owing by Borrower for such Unit of Lender Financed Inventory, in each case within twenty-four (24) hours of Borrower's receipt of such funds (or receipt of such funds by any Affiliate of Borrower).").

[17] Hr'g Tr., p. 42, lines 18-23.

obligation to NextGear,[18] he diverted the proceeds of sale from NextGear, to which they should have been paid, in order to pay other lenders and expenses.[19]

Mejorado indeed breached his contractual undertaking to NextGear but the plaintiff failed to prove that the defendant acted with the intent necessary to render the debt nondischargeable. NextGear offered no evidence establishing that when he asked NextGear for their certificates of title, Mejorado did not intend to repay it or return the certificates of title should he fail to sell the vehicles. Mejorado's uncontradicted testimony was that he'd previously remitted to NextGear the proceeds of sale of about seven hundred vehicles it had financed.[20] This evidence supports a finding that when he made the representations to NextGear concerning the specific vehicles at issue in this lawsuit, Mejorado intended to repay NextGear timely and only afterward decided to divert the sale proceeds to other purposes.

Nor did NextGear *justifiably* rely on Mejorado's representations, the degree of reliance Bankruptcy Code section 523(a)(2)(A) requires to render a debt nondischargeable.[21] "Justifiable reliance requires proof that a plaintiff *actually relied* upon the defendant's false representations and that such reliance was justified under the circumstances."[22] "The justifiable reliance standard imposes no duty to investigate unless the falsity of the representation is readily apparent or obvious or there are 'red flags' indicating such reliance is unwarranted."[23]

NextGear and Mejorado had conducted business since 2013. During the course of their dealings, numerous "red flags" should have alerted NextGear that Mejorado was departing from the parties'

---

[18] *Id.* at 45, lines 6-10. *See also, id.* at p. 54, lines 10-18 (Mejorado's testimony confirming that he received correspondence that advised him "that such titles must be returned to NextGear Capital at the address listed below by the close of business on the seventh day after the day of NextGear Capital's release of such titles to you.").

[19] *Id.* at pp. 71, lines 14-21; p. 77, line 25 – p. 78, line 9.

[20] *Id.* at p. 137, lines 5-9.

[21] *Field v. Mans*, 516 U.S. 59, 70–71, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995).

[22] *In re Minardi*, 536 B.R. 171, 187 (Bankr. E.D. Tex. 2015) (citing *First Horizon Home Loan Corp. v. Apostle* (*In re Apostle*), 467 B.R. 433, 443 (Bankr.W.D.Mich.2012) (emphasis in original).

[23] *Id.* (citing *Manheim Automotive Financial Svcs., Inc. v. Hurst* (*In re Hurst*), 337 B.R. 125, 133–34 (Bankr.N.D.Tex.2005)).

agreement. No evidence contradicted Mejorado's testimony that he communicated often with a NextGear corporate representative regarding his floorplan inventory, or that he specifically informed the plaintiff's employee of his plan to put the Range Rover to personal use.[24] Moreover, NextGear had virtually unlimited access to the business bank account into which Mejorado deposited proceeds of the sale of the Title Vehicles: indeed NextGear could draw on the account at any time.[25] NextGear's accounts receivable report reflects that Mejorado failed to make payments on the Title Vehicles for months at a time yet the plaintiff never proved that it took any steps to collect from Mejorado's account or to obtain the certificates of title.

In sum, NextGear failed to meet its burden of proof under section 523(a)(2)(A) with respect to the GMC Sierra and Chevrolet Tahoe.

**B. The Range Rover**

NextGear also failed to prove that Mejorado's debt for the Range Rover should be excepted from discharge under section 523(a)(2)(A) because it did not prove that it justifiably relied on Mejorado's representations. NextGear alleges that Mejorado concealed his purchase and personal use of the Range Rover in violation of the Note.[26] It further alleges Mejorado never disclosed that he and "Ace Auto" were the same person and that he used financing from another lender to buy vehicles in his inventory. NextGear contends that Mejorado's concealment misled it into advancing credit for the Range Rover.

---

[24] Hr'g. Tr., p. 121, line 14 – p. 122, line 3.

[25] Hr'g. Tr., p. 33, lines 5-16. Mejorado testified that he maintained a single bank account that he used for business and personal banking.

[26] Pl. Ex. 2, p. 4 of 12, ¶ 4(u) ("That Borrower shall use Advances solely for Business purposes and not for personal, family, or household purposes. This means, among other things, that Borrower may not use Advances to purchase a vehicle for Borrower's personal, family, or household use, and no Lender Financed Inventory may be used for Borrower's personal, family, or household use. This Note and all Advances requested or made hereunder shall be requested and made only for commercial purposes and Borrower hereby expressly and unconditionally waives, to the fullest extent permitted by Law, the protections of any Law intended to protect consumers or regulate consumer loans.").

Mejorado does not dispute that he fabricated the buyer's order to buy the Range Rover for himself. Mejorado testified that the Range Rover's title was also released in compliance with the parties' Title Release Program but that he was acquiring it for his personal use.[27] But no evidence established that Mejorado concealed the purpose of the purchase from NextGear when he asked it to release the title. Mejorado testified that he informed NextGear's corporate representative of his plan to use the car personally. He stated that NextGear first declined to approve financing for the Range Rover but later telephoned him to inquire why he was buying another luxury car.[28] Mejorado explained to the representative that he was "going to finance it [him]self, drive it for a few months, and sell it back like [he] did with the Porsche, with the 2015 Land Rover Range Rover, and with the 2014 Raptor."[29] No evidence contradicted his testimony or established that NextGear sought to prevent Mejorado from buying the Range Rover for himself. His statements to the NextGear employee should have alerted NextGear to Mejorado's plan for personal use of the car. The parties' prior dealings tend to corroborate Mejorado's testimony. The Range Rover transaction was not the first time Mejorado purchased a NextGear vehicle for his personal use; and the evidence established that in every instance, Mejorado notified NextGear of his plan to use the vehicle personally.[30]

The presence of "red flags" that should have put the creditor on notice is a defense to a section 523(a)(2) claim.[31] Several "red flags" should have alerted NextGear of Mejorado's intent to use the Range Rover himself before trading it for another vehicle and prompted NextGear to inquire further. NextGear's

---

[27] *Id.* at p. 75, lines 8-19; p. 76, lines 2-14; Pl. Ex. 27, p. 19.

[28] *Id.* at p. 121-22, lines 14-3.

[29] *Id.*

[30] *Id.* at p. 121, line 18 – p. 122, line 3.

[31] *Manheim Auto. Fin. Svcs., Inc. v. Hurst* (*In re Hurst*), 337 B.R. 125, 133–34 (Bankr. N.D. Tex. 2005) ("The justifiable reliance standard imposes no duty to investigate unless the falsity of the representation is readily apparent or obvious or there are 'red flags' indicating such reliance is unwarranted.").

reliance on Mejorado's representations was not justified[32] so its claim under section 523(a)(2)(A) based on Mejorado's purchase of the Range Rover for personal use fails.[33]

### 523(a)(4)

Section 523(a)(4) excepts from discharge a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."

NextGear's claim that Mejorado's debt should be declared nondischargeable requires proof of a fiduciary relationship between the parties at the time the debt was created. *Texas Lottery Commission v. Tran* (*In re Tran*), 151 F.3d 339, 342-43 (5th Cir. 1998). But section 523(a)(4) does not apply to all debts owed by fiduciaries; rather, it is limited to debts incurred in the course of relationships arising out of express or technical trusts. *Id*. State and federal law govern whether an express trust has been created. *Angelle v. Reed* (*In re Angelle*), 610 F.2d 1335, 1341 (5th Cir. 1980). Under both federal and Texas law, establishing an express trust requires intent to create a trust relationship. *See* Tex. Prop. Code § 111.004(4); *see also Mabank Bank v. Grisham* (*In re Grisham*), 245 B.R. 65, 71 (Bankr. N.D. Tex. 2000). Mere recitals in a document that an obligation is "in trust" alone will not establish a fiduciary relationship. *See First National Bank v. Parr* (*In re Parr*), 347 B.R. 561, 565 (Bankr. N.D. Tex. 2006).

NextGear argues that the Note and Security Agreement obligated Mejorado to hold and segregate for its benefit the *specific* sales proceeds from the sale of both the Title Vehicles and the Escalade, rather than simply an amount equal to the sale price. It points to paragraph 4(f) of the Note, which instructed Mejorado to hold all sales proceeds in trust for NextGear's sole benefit and to remit them to the lender within twenty-four (24) hours of receipt.[34]

---

[32] *Manheim*, 337 B.R. 125, 133–34.

[33] NextGear did not address the elements of section 523(a)(2)(A) with regard to the debt for the Escalade. No evidence established that Mejorado misrepresented anything to NextGear concerning the Escalade transaction. Accordingly, NextGear did not satisfy its burden of proving the $57,012.50 debt for the Escalade is nondischargeable under section 523(a)(2)(A).

[34] Pl. Ex. 2.

NextGear contends that this language established an express trust and imposed on Mejorado a fiduciary duty to hold, properly account for and eventually pay NextGear the proceeds of vehicles it financed.  But although Mejorado agreed to segregate the sales proceeds in a separate account, the parties' behavior established that the proceeds were not being treated as property held in trust.  Rather, Mejorado deposited all funds the dealership received into a single bank account that included his personal and business funds, and to which the parties' agreement gave NextGear nearly unrestricted access.  NextGear was able to withdraw funds from the single bank account periodically regardless of whether the funds were actual sales proceeds of its collateral.  These facts and Mejorado's testimony support a finding and conclusion that the parties never created an express trust and thus, NextGear has not met its burden of proof under section 523(a)(4).

NextGear also alleged that Mejorado embezzled NextGear's property.  Embezzlement is "fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come."  *Miller v. J.D. Abrams Incorporated* (*In re Miller*), 156 F.3d 598, 602 (5th Cir. 1998).  NextGear can establish embezzlement for purposes of 523(a)(4) only by proving that (1) the debtor appropriated funds, (2) the appropriation was for the debtor's use or benefit, and (3) the debtor appropriated the money with fraudulent intent.  *Smith v. Hayden* (*In re Hayden*), 248 B.R. 519, 525 (Bankr. N.D. Tex. 2000) (listing cases).

NextGear advanced funds it entrusted to Mejorado to buy inventory for his auto dealership, including in part the Title Vehicles and Escalade.  Mejorado's testimony satisfies the first and second elements.  Mejorado acquired the Range Rover for his personal use and used the proceeds from the sale of other vehicles subject to NextGear's lien to pay his dealership's expenses.  However, Mejorado's testimony was insufficient to establish fraudulent intent, as the foregoing discussion of section 523 (a)(2)(A) explains.  Accordingly, NextGear's debt is not excepted from discharge under section 523(a)(4).

### 523(a)(6)

Bankruptcy Code Section 523(a)(6) excepts from discharge debts "for willful and malicious injury by the debtor to another entity or to the property of another entity." *In re Miller*, 156 F.3d 598 (5th Cir.1998). "The Supreme Court, in *Kawaauhau v. Geiger*, stated that '[t]he word "willful" in [§523](a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury.'" *Raspanti v. Keaty* (*In re Keaty*), 397 F.3d 264, 270 (5th Cir. 2005) (citing *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998)). "The Fifth Circuit extended *Kawaauhau's* reasoning in *In re Miller*, 156 F.3d 598, 603 (5th Cir. 1998), stating that 'either objective substantial certainty [of injury] or subjective motive [to injure] meets the Supreme Court's definition of "willful ... injury" in §523(a)(6).'" *Id.*

Mejorado does not dispute the validity of NextGear's security interest in the vehicles and his knowledge of that security interest. Nor does Mejorado deny that: he acquired the Title Vehicles and the Escalade using funds he'd borrowed from NextGear; acquired the Range Rover for his personal use without paying NextGear for the car; borrowed from American Eagle Credit Union using the Rover as collateral; and later traded the car to Gateway GMC to purchase a 2017 GMC Sierra.

The evidence established the substantial certainty that Mejorado's actions were likely to injure NextGear, even though Mejorado denies that he intended to injure NextGear. Mejorado knew of NextGear's security interest in the vehicles as well as his obligations to the plaintiff. He testified about his experience in the car sale business and admitted that he understood the use of floor plan financing to purchase vehicle inventory for resale. Undoubtedly, it was substantially certain that Mejorado's decision to use the proceeds of NextGear's collateral to pay personal and business expenses of his sole proprietorship and to acquire vehicles for his personal use would injure NextGear. Accordingly, his

actions constitute a willful injury to NextGear within the meaning of *In re Miller*: they posed the objective substantial certainty of injury to NextGear's collateral.  156 F.3d at 603.

Finally, NextGear successfully proved the amounts Mejorado owed for each of the Title Vehicles. NextGear's Receivable Detail Report reflects:

(1) <u>2016 Chevrolet Tahoe</u>: NextGear advanced $39,299.00 to Mejorado and the payoff is $38,684.60;

(2) <u>2016 Cadillac Escalade</u>: NextGear advanced $58,199.00 and the payoff is $57,012.50;

(3) <u>2016 Land Rover</u>: NextGear advanced $99,000 and the payoff is $96,761.31; and

(4) <u>2015 GMC Sierra</u>: NextGear advanced $27,665.00 and the payoff is $27,529.23.[35]

Mejorado at trial confirmed the accuracy of these amounts.[36]  Accordingly, $219,987.64 is nondischargeable under Bankruptcy Code section 523(a)(6).

## Conclusion

NextGear failed to carry its burden of proving that Mejorado's obligation to it should be excepted from discharge on the basis on false representations or actual fraud within the meaning of 11 U.S.C. §523(a)(2)(A).  NextGear also failed to prove that the debt should not be discharged as one incurred through embezzlement or defalcation while acting in a fiduciary capacity.  However, the plaintiff did prove that Mejorado willfully and maliciously injured NextGear's interest in the proceeds of sale of vehicles subject to its security interest, so Mejorado's debt to NextGear of $219,987.64 is nondischargeable pursuant to 11 U.S.C. §523(a)(6).

Counsel for NextGear should prepare and circulate among the parties a proposed judgment in accordance with this ruling, to be submitted to the court within fifteen days.

---

[35] Pl. Ex. 4.
[36] Hr'g. Tr., p. 49, lines 14 - p. 50, line 7; p. 57, lines 4-7, 8-9; p. 60-61, lines 25-3; p. 61, lines 4-6; Pl. Ex. 4, p. 2.